UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA TROTTER,

      Plaintiff,

v.                                      Case No. 8:17-cv-2985-T-AEP

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was/was not based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff protectively filed an application for a period of disability and DIB (Tr. 153-54). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 58-89, 94-100). Plaintiff then requested an administrative hearing (Tr. 101-02). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 30-57). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-29). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1963, claimed disability beginning May 8, 2014 (Tr. 153). Plaintiff obtained less than a high school education (Tr. 178). Plaintiff's past relevant work experience included work as a paving company driver and construction laborer (Tr. 23, 53-54, 178). Plaintiff alleged disability due to depression, migraines, inability to read or spell, pain in her arm and leg, and an inability to lift more than 30 pounds with her back or five pounds with her arm (Tr. 177).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2018 and that Plaintiff had not engaged in substantial gainful activity since May 8, 2014, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: L4-5 degenerative disc disease with mild spondylosis at L5-S1; C5-6 spondylosis with foramina stenosis and osteophytic disc complex at C5-6; left shoulder mild degenerative changes; migraine headaches; depression; and anxiety (Tr. 17). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with the following limitations: no climbing of ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ladders, ramps, or stairs; must avoid working around unprotected heights; must avoid extreme industrial vibrations and a loud-noise environment; must avoid concentrated exposure of bright light directly to the eyes; unable to do work that involves shoveling; limited to understanding and carrying out simple, routine, and repetitive tasks; and able to make basic decisions and adjust to simple changes in the work setting (Tr. 19).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 23). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a ticket taker, non-checking cashier, and cafeteria attendant (Tr. 24, 55). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 25).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.[1] If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the

---

[1] The cited references to the regulations pertain to those in effect at the time the decision was rendered.

ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct

legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

## III.

Plaintiff argues that the ALJ erred by (1) failing to properly consider Plaintiff's subjective complaints; (2) failing to properly assess Plaintiff's RFC; and (3) failing to establish other work exists in the national economy that Plaintiff could perform. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A. Subjective Complaints

Plaintiff first contends that the ALJ failed to properly consider Plaintiff's subjective complaints. Namely, Plaintiff argues that the erred as follows: (1) the ALJ never made any findings regarding whether an underlying medically determinable physical or mental impairment could reasonably be expected to produce Plaintiff's pain or other symptoms; (2) the ALJ improperly discredited Plaintiff primarily because the ALJ found Plaintiff's subjective complaints were not supported by objective evidence and, in doing so, improperly made medical judgments from raw medical data; and (3) the ALJ failed to address the factors set forth in 20 C.F.R. § 404.1529(c)(3). As Plaintiff asserts, in addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529. To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*,

5

921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. § 404.1529. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225. A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*) (citation omitted).

> Here, the ALJ articulated the appropriate standard, stating:
>
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)–i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical and mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(Tr. 19-20). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and their consistency with the evidence of record but did not explicitly state that "the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged" or that "Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence" (Tr. 19-23). The ALJ's analysis, however, demonstrates that he fully considered Plaintiff's impairments and symptoms and the extent to which the evidence of record supported or failed to support Plaintiff's statements regarding the intensity, persistence, and limiting effects of such symptoms (Tr. 19-23).

In the decision, the ALJ discussed Plaintiff's testimony regarding her pain and limitations stemming from her impairments, including her inability to lift a gallon of milk without using two hands, her inability to walk more than 15 minutes before sitting and resting for five to 10 minutes, inability to stand for more than 15 to 20 minutes at a time, sensitivity to noise and light as a result of her migraines, dizziness from medication, limited ability to turn her neck due to chronic neck pain, anxiety, and moodiness (Tr. 20-21). The ALJ then addressed every group of limitations, including postural, manipulative, visual, communicative, and environmental limitations, and described how the evidence of record failed to support Plaintiff's assertions of disabling limitations (Tr. 21-23). The ALJ also explicitly stated that, as to Plaintiff's allegations about lifting, sitting, standing, and walking, he did not view Plaintiff's allegations as consistent with the medical record, daily activities, or observations of Plaintiff during the hearing and again repeated that, although Plaintiff's abnormalities likely cause some back pain and discomfort, they did not come close to accounting for the degree of restrictions on lifting, carrying, sitting, standing, or walking Plaintiff alleged (Tr. 21). Accordingly, the failure to use an exact turn of phrase regarding his consideration of the existence of Plaintiff's impairments and the severity of such impairments does not warrant remand where the ALJ provided a sufficient rationale for concluding that the intensity, persistence, and limiting effects of Plaintiff's impairments were not as severe as alleged. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (noting that the ALJ's "determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable" a court to conclude that the ALJ considered the plaintiff's medical condition as a whole) (internal quotation marks and citation omitted); *see Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 740 (11th Cir. 2017) (quoting *Dyer*).

Indeed, as the Commissioner notes, the plaintiff in *East v. Barnhart*, 197 F. App'x 899, 904-05 (11th Cir. 2006), raised the identical issue to no avail. In considering the issue in *East*, the Eleventh Circuit concluded that the ALJ did not err in failing to explicitly address whether the plaintiff had impairments that could reasonably be expected to produce the type of pain the plaintiff alleged where the ALJ acknowledged in her decision the requirement to apply the pain standard and, taking the ALJ's opinion as a whole, indicated that she determined that the plaintiff had impairments that could reasonably be expected to produce the type of pain and other symptoms alleged but that the ALJ did not believe the plaintiff's testimony as to the severity of the pain and symptoms. *Id.* at 905. So, too, is the case here.

The ALJ discussed the objective evidence, medical evidence, Plaintiff's testimony, and the ALJ's observations during the administrative hearing and clearly concluded that, although Plaintiff experienced several impairments that could produce the type of pain Plaintiff alleged, the evidence did not support the degree or severity alleged. For example, Plaintiff points to records from Dr. John Head as indicative of "signs" indicating that Plaintiff experienced greater limitations than accounted for by the ALJ (Tr. 273-303, 332-92, 476-90, 607-11). Plaintiff argues that Dr. Head's notations regarding pain with range of motion of her neck and lower back, positive straight-leg raise test on her left side, and tenderness to the left side of Plaintiff's lower back over the left S1 area support Plaintiff's subjective complaints. Plaintiff fails, however, to note that, upon nearly every examination, Dr. Head indicated no abnormal findings as to Plaintiff's neck and no otherwise abnormal findings with respect to the inspection, palpation, motion, stability, or strength of Plaintiff's bones, joints, and extremities and, additionally, no abnormalities with Plaintiff's gait or station and no motor defects or sensory defects (*see*, *e.g.*, Tr. 274, 276, 278, 333, 335, 477, 608). Despite Plaintiff's argument to the

contrary, Dr. Head's findings and treatment notes thus do not support Plaintiff's allegations of disabling limitations with respect to her neck or back.

Plaintiff also asserts that the ALJ erred by relying upon objective evidence, including MRIs.[2] As the ALJ explained, however, although both the MRI of the lumbar spine and the MRI of the cervical spine indicated impairments that would likely cause some back pain, neck pain, and discomfort, the abnormalities did not account for the degree of exertional limitations Plaintiff alleged during the hearing (Tr. 21). As noted, the MRI of the lumbar spine indicated mild lumbar spondylosis and left-sided conjoined nerve root level L5/S1 but showed no evidence of disc herniation, central canal stenosis, or foraminal stenosis (Tr. 21, 559). The MRI of the cervical spine indicated cervical spondylosis with a disc/osteophyte complex at C5-C6 asymmetric to the right with moderate to severe foraminal stenosis raising a possibility of impingement of the existing right C6 nerve root and disc/osteophyte complex at C6-C7, which was slightly asymmetric to the right with moderate right foraminal stenosis in association with uncinate hypertrophy bit no cord signal abnormality (Tr. 21, 595-96). The ALJ correctly concluded that these MRIs did not demonstrate impairments that would substantiate Plaintiff's statements regarding her ability to walk for no more than about 15 minutes before sitting and resting for five to 10 minutes; sitting for no more than 30 minutes at a time; and standing for no more than 20 minutes at a time, especially in light of the of the other evidence of record, including Dr. Michael Feiertag's April 2014 assessment indicating that Plaintiff was working

---

[2] In addition to the MRIs, the ALJ discussed an April 2014 nerve conduction study performed as a result of Plaintiff's complaints regarding radiating numbness, pain, and sensation loss in her left upper extremity (Tr. 22, 259). Dr. Erik Herman concluded that Plaintiff had a normal left upper extremity with no evidence of left or right carpal tunnel syndrome, left ulnar neuropathy, radial sensory neuropathy, brachial plexopathy, thoracic outlet syndrome, cervical radiculopathy, peripheral neuropathy, or myopathy (Tr. 259). Given Dr. Herman's finding of no peripheral neurogenic source for Plaintiff's subjective complaints regarding radiating numbness, pain, and sensation loss, the ALJ properly concluded that the evidence did not support those subjective complaints (Tr. 22).

light duty, could do everything except shovel, tolerated activity-related pain, and achieved maximum medical improvement as of that date with a 0% impairment rating (Tr. 21, 263).

As the ALJ noted, the MRI of Plaintiff's left shoulder similarly did not support Plaintiff's subjective complaints, including her statements regarding an inability to lift or manipulate even a gallon of milk with the left hand without the assistance of the right hand (Tr. 22). Indeed, as Dr. David Klein indicated in February 2014, the MRI showed some arthritic changes at the AC joint and some mild tendonitis within the supraspinatus tendon without significant partial thickness or full thickness tear and no atrophy of the rotator cuff musculature (Tr. 22, 305, 522). Dr. Klein likewise noted that the X-rays of the left shoulder showed no significant bony or soft tissue abnormalities (Tr. 305, 579).

Furthermore, the mere fact that the MRIs demonstrated abnormalities or impairments did not substantiate Plaintiff's subjective complaints or allegations regarding her limitations. "Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*). Furthermore, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). As the ALJ aptly described, all of the evidence did not support limitations to the extent alleged by Plaintiff.

Additionally, Plaintiff argues that the ALJ improperly engaged in "sit and squirm" jurisprudence. The Eleventh Circuit has condemned "sit and squirm" jurisprudence, wherein an ALJ, who is not a medical expert, subjectively arrives at an index of traits he or she expects

the claimant to manifest at the hearing and then denies a claim if the claimant falls short of that index. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). In considering a claimant's subjective complaints, however, an ALJ is not prohibited from considering a claimant's appearance and demeanor during the administrative hearing. *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (citation omitted). Indeed, an ALJ may consider a claimant's demeanor but may not discredit the claimant's testimony solely on that basis. *See id.* Instead, an ALJ should consider all of the evidence in making a credibility determination. *See id.* In this instance, as the Commissioner contends and as the foregoing demonstrates, the ALJ did not rely solely upon Plaintiff's demeanor, actions, or appearance during the hearing in determining that Plaintiff was not as limited as alleged. Though the ALJ did not need to describe Plaintiff's demeanor, actions, or appearance during the administrative hearing, his decision to do so in conjunction with his consideration of the evidence of record and hearing testimony did not constitute error.

The ALJ's statement about Plaintiff's motorcycle likewise did not constitute error. In the decision, the ALJ referenced Plaintiff's testimony regarding her attempt three months prior to the administrative hearing to ride her motorcycle (Tr. 21, 56-57). The ALJ stated:

> The claimant says she still has her motorcycle. About three months before the hearing, the claimant says she attempted to ride the motorcycle and fell. Since this incident, the claimant says she has not tried again to ride her motorcycle.

(Tr. 21). Though probably unnecessary to reference, the ALJ succinctly and accurately summarized Plaintiff's testimony regarding the fact that she still has her motorcycle, she tried to ride it a few months prior to the hearing, she fell in that attempt, and she has not attempted to ride it since (Tr. 56-57). The ALJ merely noted it as part of Plaintiff's testimony but did not cite that portion of Plaintiff's testimony as the basis for finding Plaintiff's subjective complaints

inconsistent with the other evidence of record. Accordingly, the ALJ did not err in summarizing Plaintiff's testimony regarding her motorcycle.

Plaintiff also argues that the ALJ erred by not explicitly addressing each of the factors set forth in 20 C.F.R. § 404.1529(c)(3). Under the regulation, the ALJ may consider a claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; any measures the claimant uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii). In the decision, the ALJ discussed Plaintiff's daily activities, Plaintiff's statements regarding the location and intensity of her pain, and side effects of medication in conjunction with the objective evidence and medical opinions (Tr. 20-23). The decision indicates that the ALJ fully considered Plaintiff's subjective complaints and properly concluded that the evidence did not support the severity of the limitations alleged by Plaintiff. Although the ALJ did not run through a checklist of factors, the decision indicates that the ALJ properly considered the evidence of record in assessing Plaintiff's subjective complaints. Such a clearly articulated credibility finding regarding Plaintiff's subjective complaints need not be disturbed. *Foote*, 67 F.3d at 1562. In sum, the ALJ properly considered Plaintiff's subjective complaints, and substantial evidence supports the ALJ's decision.

**B.     RFC**

Next, Plaintiff argues that the ALJ failed to properly assess Plaintiff's RFC. Plaintiff contends that substantial evidence does not support the RFC assessment because the ALJ relied on outdated assessments from state agency medical consultants and Plaintiff's testimony did

not support the limitations set forth in the RFC.[3] At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1529(c)(3), 404.1545(a) & (e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996); SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (as amended); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

Despite Plaintiff's assertions to the contrary, the ALJ correctly considered the evidence of record in determining Plaintiff's RFC. First, with respect to the state agency medical consultants, the ALJ did not err in considering their opinions, and such opinions were not "outdated." State agency medical consultants are considered experts in the Social Security disability evaluation process. 20 C.F.R. § 404.1527(e)(2)(i). When considering the weight to afford state agency medical consultants, SSR 96-6p provides:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole,

---

[3] Plaintiff also contends that the ALJ selectively cited the medical evidence in support of the RFC assessment and simply reiterates the same arguments set forth in section III.A, each of which have been rejected and need not be addressed a second time herein.

> including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. …
>
> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.

SSR 96-6p, 1996 WL 374180, at *2-3 (S.S.A. July 2, 1996). Further, even if the state agency medical consultant cannot review all of the claimant's medical records before rendering an opinion, the ALJ has access to the entire record, including the claimant's testimony, and can determine whether the opinion is supported by and consistent with the evidence of record and thus whether to afford the opinion great weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-examining doctor where the doctor cited several portions of the record in support of her conclusions, and the ALJ, who makes the ultimate determination, had access to the entire record, including the claimant's testimony).

Here, the ALJ appropriately considered the opinions of three state agency medical consultants from 2014 and 2015 in conjunction with the rest of the medical evidence (Tr. 23, 60-68, 70-83). To the extent that the opinions comported with the other evidence of record, the ALJ afforded the opinions either significant weight or moderate weight (Tr. 23). Where the opinions deviated from the other evidence of record, the ALJ afforded Plaintiff *greater* limitations than those opined by the state agency medical consultants (Tr. 23). Given the ALJ's discussion and consideration of the entire record, including the evidence that the state agency medical consultants did not have a chance to review such as the MRIs and X-rays described herein, the ALJ's consideration of the state agency medical consultants' medical opinions was not in error and did not require further development.

The ALJ also properly considered Plaintiff's testimony throughout his discussion of the RFC and noted several instances where Plaintiff's testimony supported his findings (Tr. 20-23). For example, in concluding that Plaintiff did not experience any visual limitations, the ALJ cited to Plaintiff's statement in a function report regarding her ability to drive a car as indicative that Plaintiff retained adequate far-range vision (Tr. 22, 191). With respect to environmental limitations, the ALJ indicated that Plaintiff's testimony focused on problems tolerating exposure to noise, light, and other environmental factors due to migraine headaches (Tr. 22). Given such testimony, the ALJ adopted Plaintiff's allegations and accounted for Plaintiff's environmental limitations by finding that Plaintiff must avoid extreme industrial vibrations and a loud-noise environment and must avoid concentrated exposure to bright light directly to the eyes (Tr. 19, 22-23). In addition, based on Plaintiff's testimony regarding side effects of lightheadedness from her medication, the ALJ included a limitation that Plaintiff must avoid working around unprotected heights (Tr. 19, 23). Further, in determining Plaintiff's postural limitations, the ALJ considered Plaintiff's statements in two function reports regarding her daily activities (Tr. 21-22, 185-92). As the ALJ concluded, Plaintiff's described daily activities, combined with the objective evidence of record, did not indicate limitations as severe as alleged but did provide a basis for several postural limitations (Tr. 19, 21-22). Accordingly, the ALJ correctly stated that Plaintiff's testimony supported the RFC assessment.

Review of the decision reflects that the ALJ properly considered all of the evidence of record, including the opinions from the state agency medical consultants and Plaintiff's testimony, in assessing Plaintiff's RFC. Indeed, in determining Plaintiff's RFC, the ALJ applied the correct legal standards. As described above, substantial evidence supports the ALJ's RFC assessment.

### C. Other Work

Finally, Plaintiff asserts that the Commissioner failed to meet her burden at step five of establishing that other work existed in the national economy that Plaintiff could perform. Essentially, Plaintiff argues that the ALJ improperly relied upon the VE's testimony because such testimony was premised upon an inadequate hypothetical that did not encompass all of Plaintiff's limitations. At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *See Foote*, 67 F.3d at 1559. "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted). There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Medical Vocational Guidelines and by using a VE. *Phillips*, 357 F.3d at 1239-40. A VE "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Id.* at 1240.

If the ALJ utilizes the testimony of a VE, the ALJ must pose an accurate hypothetical to the VE that accounts for all of the claimant's impairments. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citation omitted). When the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the

hypothetical posed to the VE. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). For a VE's testimony to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227.

As explained above, the ALJ properly determined Plaintiff's RFC based on consideration of the objective evidence of record, opinion evidence, Plaintiff's testimony, and the ALJ's observations. The ALJ then appropriately included in the hypothetical the limitations that the ALJ determined the record supported (Tr. 19-25, 54-55). Given the ALJ's determination that the record did not support the degree of limitations alleged, including as to Plaintiff's left shoulder impairment and radiculopathy, the ALJ appropriately omitted such limitations from the hypothetical to the VE. *Crawford*, 363 F.3d at 1161. The hypothetical therefore comprised all of Plaintiff's credible limitations, and the ALJ correctly relied upon the VE's testimony in determining that Plaintiff maintained the ability to perform other work with such limitations. Accordingly, the ALJ did not err in that regard.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 26th day of March, 2019.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record